VAN ALLEN WHITEHEAD ET AL. *v.* T. H. CURRY ET AL.

TAX-TITLE. *Validity. Purchaser; duty as to payment of taxes. Tenant in common.*
Curry and family lived with his wife's mother on land owned by the latter, in sec. 2. He acted as agent of the mother, and was to pay taxes, keep up repairs and support her for the rent of the place. By mistake, the land had previously been assessed as in sec. 3 ; but he paid taxes several years, the error not being discovered. Meantime the land was sold to the state for taxes. After the death of the mother, the period for redemption having expired, learning of the error and the sale to the state, he applied to merchants for a loan, in order that he might buy the land. They refused him the loan and bought it themselves, but gave him an option to purchase it, which, some time after his removal from the place, he availed of, paying an advanced price and taking the title in the name of his minor children. *Held,* that this was no violation of any duty to the heirs of the mother, tenants in common with his wife, and that the children acquired a good title

FROM the chancery court of Wilkinson county.
HON. W. R. TRIGG, Chancellor.

Appeal by complainants from a decree in favor of defendants. The facts as found by the court from the record are stated in the opinion.

*T. V. Noland*, for appellants.

Curry first attempted to buy the land in his own name, but was advised that such a purchase would enure to the benefit of all the heirs. He then set to work to buy for his children. Assuming that he acted in good faith prior to 1886, it was his duty then to notify the heirs of the status of the property. Instead of this, he sought to do indirectly what he could not do directly.

His round-about course does not change the principle that one in possession of land must keep down the taxes and cannot buy in a tax-title. He was the tenant of Mrs. Robertson at the time of her death and before, and held over afterwards. He acquired this title either by negligence or fraud, and in equity holds it for the benefit of all the heirs. 47 Miss. 44 ; 52 Ib. 367.

*Calhoon & Green*, on the same side.

1. Wherever there is a fiduciary relation, whereby knowledge of title is acquired, or where such relation imposes duty, no right can be acquired to the prejudice of the owner by a trustee, either through such knowledge or from omission of such duty. *Cameron* v. *Lewis*, 56 Miss. 76 ; *Johnson* v. *Outlaw*, Ib. 541.

2. Wherever the obligation is imposed, either by relation to the title, as tenancy in common, or by possession as tenant, or by express contract to pay the taxes, then no title, acquired through the failure to perform the obligation, can avail the purchaser. *Gaskins* v. *Blake*, 27 Miss. 675 ; *McLaughlin* v. *Green*, 48 Ib. 209 ; *Fox* v. *Coon*, 64 Ib. 465 ; *Pool* v. *Ellis*, Ib. 555 ; *Stewart* v. *Matheny*, 66 Ib. 21.

In *Carter* v. *Bustamente*, 59 Ib. 560, Chalmers, J., thought the wife estopped from acquiring a tax-title as against her husband's grantee.

3. The estate of Curry and wife, though only a tenancy at will, was sold as well as that of Mrs. Robertson ; they were liable as occupants to pay the taxes. Hence, as the estate of Mrs. Robert-

son was sold for taxes due by Curry and wife, the subsequent purchase by either under this sale would operate as a redemption. *Ragsdale* v. *R. R. Co.*, MSS. op. by this court.

As Curry knew of the sale before Samuels bought, it was his duty to notify the heirs of Mrs. Robertson, instead of going into a scheme (rendered possible by his own default) to appropriate to his own use that which he had agreed to preserve for others.

*J. H. Jones*, for appellees.

The bill is a comedy of errors from beginning to end. The greater part of it is devoted to charges that defendants fraudulently procured the land to be assessed and sold for taxes, whereas the truth is that Mrs. Robertson herself had the land erroneously assessed, and none of the family knew of the mistake until after her death and after the sale to the state. This fact completely answers the charge of fraud.

Curry bought the land from Samuels & Bro., who had a good title. He paid his own money for it: Mrs. Curry had nothing to do with this. The title of Samuels & Bro. being good and untainted with fraud, they could sell to any one.

There is no resulting trust in favor of complainants, for their money was not paid in the purchase of the land by Curry. *Bibb* v. *Hunter*, 79 Ala. 351 ; *Walker* v. *Brungard*, 13 S. & M. 723 ; 1 Perry on Trusts, § 135 ; 10 Am. & Eng. Enc. L., p. 30, § 13, and cases there cited.

There is no constructive trust, because there was no fiduciary relation between Curry and the heirs of Mrs. Robertson. He did not obtain the title by any fraud or by reason of any trust that was violated. 10 Am. & Eng. Enc. L., 61, note 1 ; Ib. 73, § 2.

He was not the tenant of complainants. He was not their agent, and he was not a co-heir or tenant in common. The common-law fiction of unity between husband and wife has been completely abolished. Code 1880, § 1167. Mrs. Curry herself could have bought the land from Samuels & Bro.

I have argued the case as if Curry was the purchaser in his own right. If we treat him as such, the decree of the court below is

correct, because: 1. Samuels & Bro. bought the land in good faith after the title of Mrs. Robertson had been divested and when the heirs had no interest therein. 2. There was no reason, legal or equitable, to prevent Curry from purchasing from them, or from the state. 1 Perry on Trusts, § 180; 2 Ib., § 180; 22 Pick. (Mass.) 48; *Fox* v. *Macreath*, 2 Cox Chy. R. 320.

WOODS, C. J., delivered the opinion of the court.

The original bill herein was filed in the chancery court of Wilkinson county for the purpose of having cancelled a deed made from the state to M. & C. Samuels, on November 5, 1886, and a deed made by the Samuels Brothers to a part of the respondents on January 7, 1889, to the lands described in the bill, as a cloud upon complainants' title.

The bill avers that complainants are heirs-at-law of one Martha Robertson, deceased, and owners of an undivided five-sixths interest in 300 acres of land in sec. 2, T. 2, R. 4, of which lands said Martha Robertson had died seized and possessed; that Thos. H. Curry and Elizabeth Curry, two of the respondents, were husband and wife, and son-in-law and daughter, respectively, to said Martha Robertson; that in 1880, said Thos. H. and Elizabeth Curry intermarried, and thereafter lived on the land in controversy with Martha Robertson, the mother of Elizabeth Curry, up to the day of Mrs. Robertson's death in 1885; that these parties lived together on this agreement, viz., that said Thos. H. Curry was to have the use of said lands rent free, and, in consideration thereof, was to care for and supply Mrs. Robertson's wants, and was, further, to pay the taxes on the lands and keep the place in repair; that in 1883 said Thos. H. fraudulently permitted the lands to be sold for taxes; that he fraudulently kept this fact concealed from Mrs. Robertson up to her death; that he fraudulently failed and declined to redeem the lands within the period of redemption; and that for the purpose of procuring title to themselves, or their children, the said Thos. H. and Elizabeth combined with M. & C. Samuels to fraudulently procure the state's deed to the lands to the

said M. and C. Samuels, with the further fraudulent purpose of having said M. and C. Samuels afterwards convey the title thus acquired to said Thos. H. and Elizabeth Curry, or their children, and that, in pursuance of this fraudulent design and purpose, said M. and C. Samuels conveyed the lands, so bought by them from the state, to the children of said Thos. H. and Elizabeth Curry, the other respondents named in the bill. The bill alleges that by reason of Thos. H. Curry's and Elizabeth Curry's relation to the land and their relation to the complainants, as tenants in common, they were incapacitated to acquire this title derived from the state. Wherefore the bill was filed, and Thos. H. and Elizabeth Curry, and their children, and M. and C. Samuels are made respondents.

The answer of the Samuels Brothers denies all charges of fraud made against them, but admits the purchase, on the suggestion of Thos. H. Curry, of the lands, with the twofold purpose of gratifying Curry's wish and of making money out of the purchase ; they admit they agreed, verbally, to give Curry the refusal of the sale of the lands or an option on them, at such price as they and Curry might agree upon, and that they promised to wait a reasonable time on Curry to purchase if he wished.

The answer of the children is the customary one of minors of tender age.

The answer of Thos. H. and Elizabeth Curry denies every charge of combination and fraud, but admits the principal facts alleged in the bill : they deny that Curry fraudulently permitted the lands sold, or that he fraudulently failed and refused to redeem, or that he fraudulently neglected to inform Mrs. Robertson of the forfeiture of her lands for non-payment of taxes : or that he combined with M. and C. Samuels fraudulently to acquire the title to himself or his children. On the contrary, they assert that the 300 acres of land had for a long series of years been erroneously assessed by Mrs. Robertson as in section 3, instead of section 2, in which it really was ; that they had no knowledge of such erroneous assessment, and that in pursuance of Curry's agreement, in good faith, he paid upon Mrs. Robertson's lands as she had them assessed, beginning with the year 1880, and ending with 1886, when he first learned of the

error, and when he first learned of the sale made to the state more than two years before. The answer further avers that the 300 acres of land in section 2, which Mrs. Robertson really owned, had been wholly dropped from the assessment roll for many years, and that they were only again restored thereto in 1883, when they were assessed as ".unknown," and that Curry had no knowledge of this until 1886.

The evidence shows conclusively that Mrs. Curry was in total ignorance of all the matters embraced in the bill until afterward. The evidence shows satisfactorily that Samuels Brothers refused to lend Curry the money with which to buy the lands from the state, when he approached them for that purpose, but that they bought as a business venture to make money, giving Curry an option on the lands, if he chose to buy in a reasonable time ; and that, after waiting on Curry more than two years, and after their notification to Curry that they had kept the option open for him as long as they thought reasonable, Curry then bought at an advance of about 200 per cent. on the price paid the state by them. The evidence fairly supports the answer as to Thomas H. Curry's connection with the trans-action.

We have fully stated the pleadings and proofs, because a thorough apprehension of these is alone necessary in order to at once deter-mine the entire case.

The charges against Mrs. Curry, who was the co-heir and tenant in common of the complainants, are utterly unsupported by any proofs. The charges against M. and C. Samuels are likewise not properly supported, and they, equally with all others, had a perfect right to purchase from the state. The title to the lands was in the state, and the period for redemption had expired long before they ever heard of their forfeiture. Why should not they purchase, just as any other stranger might have done? Their only offense was the giving to Curry the option on the lands. We confess our inability to see how this made their purchase fraudulent.

As to Curry, the record shows that the lands were forfeited for non-payment of taxes during his occupation of the premises, in con-junction with Mrs. Robertson, the owner; but it is manifest, on

the whole evidence, that the taxes on the lands were paid faithfully from 1880 to 1886 bv Curry, in accordance with Mrs. Robertson's wishes, and precisely as she had herself had them assessed for very many years. It is reasonably certain that Curry supposed, until November, 1886, that the taxes on Mrs. Robertson's lands had been regularly paid, and that he had no knowledge of the error Mrs. Robertson had fallen into, and into which she had led him in the payment of the taxes, until that time. He was not her heir-at-law; he was not tenant-in-common with the complainants, and Mrs. Robertson's death in 1885 had put an end to the agreement under which he had previously occupied the premises. The title of the state had matured by the expiration of the period for redemption, and the lands were open to the world for purchase. And this state of affairs had occurred without any default, much less any fraud, on the part of Curry. It is to be remembered, too, that Curry himself had ceased to reside upon the premises for a year or more antecedent to his purchase of the place from the Samuels Brothers for his minor children; and that the presumption is, also, from the record, that his entire family had ceased to reside upon the lands before such purchase.

Under these circumstances, we can see no legal objection to Curry's buying either for himself or for his children.

The decree of the chancellor was in harmony with these views, and is, therefore,

*Affirmed.*